## ATLANTIC COAST ·LINE RAILROAD· CO. *v.* WILLIAMS.

1. Failure to charge as to a matter pertinent to a case can not be taken advantage of by assigning error upon a charge correctly instructing the jury as to other matters involved.

2. The trial judge did not, in effect, define the observance of all ordinary and reasonable care and diligence to be the doing of "anything within possibility."

3. Nor did the judge, in leaving the jury to pass on the merits of the defendant's contentions, put upon it the duty of exercising a higher degree of diligence than that imposed by law, or instruct the jury, as matter of law, that the defendant's employees ought to have done certain things which it claimed they could not possibly have done under the circumstances.

4. In stating to the jury the contention of the plaintiff, no error prejudicial to the defendant company was committed.

5. The court correctly instructed the jury as to what would authorize a finding in favor of the defendant.

6. The verdict returned was warranted by the evidence.

Argued June 22,—Decided August 12, 1904.

Action for damages.   Before Judge Spence.   Mitchell superior court.   December 21, 1903.

*D. H. Pope, John D. Pope,* and *I. A. Bush & Sons,* for plaintiff in error.   *Haggard & Dasher* and *J. W. Walters,* contra.

EVANS, J.   The plaintiff below, Williams, brought suit against the railroad company for damages, alleging that a horse belonging to him had been negligently killed by one of its trains.   On the trial of the case, one of the plaintiff's witnesses, who lived near the point where the animal was struck by the engine, testified as follows:   A short while before the train came along, she saw the horse running in a pasture which adjoined, but which was not fenced off from, the company's right of way.   The horse came to within thirty or forty yards of the railroad, and then started to cross the track.   Witness first noticed the· approaching train when it was within twenty-five or thirty yards from the horse, which was at that time running along the side of the track.   It started across, then attempted to avoid the collision by changing its course and going in the direction of the pasture, but was struck by the engine at about the same time.   There was nothing except the telegraph poles to obstruct the engineer's view of the horse as the train approached the scene of the killing, and the horse could·have been seen by him from a distance of 200 or 250

yards up the track. The pasture was on the side of the engine opposite to that on which the engineer was stationed. The train was running at full speed; no effort to check it was made, nor was the bell rung, the whistle blown, nor any "cattle alarm" given. One of the company's road supervisors, who was riding on the engine at the time, was introduced as a witness in its behalf, and gave the following account of the occurrence: He was sitting on the fireman's box, and first saw the horse when the train was "five or six or seven telegraph poles" distant. Telegraph poles are about two hundred feet apart. At that time the horse was in the pasture, some 75 or 100 feet from the right of way, standing with his head up. Witness "was noticing the way that horse held his head; it made a very pretty sight." Had no idea he would go to the track, but when the train approached to within "three or four or five or six hundred feet of the horse, . . he started in towards the track." After reaching it, the horse ran ahead of the train only a short distance before he was struck by the cylinder box on the left-hand side of the engine. Witness had plenty of time, after the horse started towards the track, to have told the engineer to sound his whistle, but did not do so, as he did not think the horse would attempt to cross. The speed of the train was about thirty miles an hour. The company's engineer testified: When he got to within about three hundred yards of the horse, he was feeding there in the field. Never saw the horse start towards the track. When first seen, the horse was about 75 or 100 feet from the track. Was on left-hand side of the engine when witness last saw the horse. Never saw the horse any closer to the track. Just prior to the time he was struck, witness was looking ahead down the track. Does not keep his eyes off of the track in front much when running a train. The track at that point was straight, and there was nothing between him and the horse to keep him from seeing the horse; but from the time he first sighted the horse until after the horse was struck, witness was looking ahead. Did not know the horse was struck, until told so by the supervisor. The jury returned a verdict for the plaintiff, and the company filed a motion for a new trial, in which complaint was made that the verdict was contrary to law and the evidence, and in which exception was taken to various charges of

the court.   This motion was overruled and the defendant excepted.

1.  In one of the charges excepted to, the court undertook to state the contentions of the railroad company.     Complaint is made that this charge was erroneous because the court did not, in the same connection, state to the jury another contention which was relied on by counsel for the company.     There is, however, in this assignment of error, no suggestion that the court did not correctly state such of the contentions of the company as were covered by this charge.     As has been repeatedly ruled by this court, a charge which is itself correct and free from objection is not open to criticism because the court failed to instruct the jury as to another matter pertinent to the case.     *Roberts* v. *State,* 114 *Ga.* 450, 453, and cit.

2.  The court instructed the jury that the question whether or not the company exercised all ordinary care and diligence to prevent the injury was one solely for them to pass upon, and it was for them to determine whether the company had exercised such care and diligence, or had not exercised any, " or whether it was possible for them to have prevented the injury, under the testimony submitted."     The criticism made upon this charge is, that " the court not having defined in any part of the charge what ' all ordinary and reasonable care and diligence ' was, in effect . . defined it to be anything within possibility; which is not the law applicable to this case."     We do not think the charge could have been so understood by the jury.     The court did not tell them that it was incumbent on the company to show that the employees in charge of its engine had done everything within possibility to prevent the injury, but left them to determine whether the company had failed to exercise proper diligence, or had, as claimed by its counsel, done everything possible under the circumstances, the horse having suddenly rushed on to the track in front of the engine, and it not being possible for the engineer to prevent the injury after the peril to the animal became apparent.     That such was the contention of counsel appears from the record before us; and the court evidently undertook to instruct the jury that they were to determine whether this contention was in accord with the truth of the case, or whether the company exercised no diligence at all, as the plaintiff insisted, or a degree

of diligence falling short of all ordinary and reasonable care. It is to be noted that no exception is taken to the failure of the court to give to the jury the legal definition of " all ordinary and reasonable care and diligence." The jury were fully and fairly instructed as to the contentions of the respective parties, and told that the duty resting upon the company was to exercise ordinary care and diligence. Read in connection with the entire charge on this subject, the portion excepted to does not appear to have been calculated to mislead the jury or to have in any way operated to the prejudice of the defendant company.

3. The court instructed the jury that it was for them to determine whether or not counsel for the railroad company were " correct in their contention that the horse was situated some distance from the right of way, in no danger, and that the exercise of all ordinary care and diligence did not require" the company's engineer " to blow the whistle and ring the bell or stop the train when the horse was situated the distance that he was from the right of way, when they [the company's servants] came in view of it, and that the horse remained out of danger, was too far from the track to be in danger, until they got so close to him that it was impossible for them to have prevented the injury; that he suddenly ran upon the track when they were not expecting it and when they had no reason to expect it." The plaintiff in error insists that this instruction was " argumentative," was not the law, in that it required " the company to blow the whistle, ring the bell, and stop the train for stock standing some distance from the road," and put " the definition of the diligence on defendant to be anything possible," and was not adjusted to the law or the facts of the case. The charge is not subject to any of these objections. The court merely left the jury to pass upon the merits of the company's contention, which, so far as appears, the court correctly stated. Indeed, there is no complaint that the court misstated its contention, and certain it is that the court did not tell the jury that the company was bound to do everything possible to prevent the injury in the exercise of ordinary diligence.

4. Another complaint made in the motion for a new trial is that the judge erred in charging the jury as follows: " The plaintiff contends that the company did not exercise that care

and diligence which the law requires of them in running up to the horse standing 75 or 100 feet from the track without blowing the whistle or ringing the bell." It is insisted that this charge was illegal and "not adjusted to the law and facts of the case." The court was merely stating the plaintiff's contention, without undertaking to say whether or not it was meritorious under the evidence submitted, or whether, as matter of law, it was or was not incumbent on the company, under the circumstances, to blow the whistle or ring the bell.

5. The court also charged the jury: " You take the evidence and determine all these questions as to what is the truth of the case; and if you find,—are satisfied from a preponderance of the testimony in this case,—that the company is liable, or if you believe that the company has failed to show you that they did exercise all ordinary care and diligence to prevent this injury, you ought to find for the plaintiff; but if you are satisfied that the company did exercise all ordinary and reasonable care and diligence to prevent the injury, and that they were unable to do it, then you should find for the defendant." The company excepted to this charge, on the ground that "it defines the diligence required of defendant so as to make it liable if it was able to prevent the killing of the horse." This is not a just criticism. After telling the jury that they ought to find for the plaintiff if they believed that the company had failed to show that it had exercised " all ordinary care and diligence to prevent the injury," the trial judge, in effect, added that the jury should find for the defendant if they were satisfied that the company, notwithstanding it "did exercise all ordinary and reasonable care and diligence to prevent the injury," was "unable to do it." This was a correct legal proposition and was precisely in accord with the defense relied on by the company.

6. After reviewing the testimony as it appears in the record before us, we are very clearly of the opinion that the verdict returned in favor of the plaintiff below was fully warranted. It was for the jury to say whether or not the company's engineer ought to have anticipated that the plaintiff's horse, being, when first seen, 75 or 100 feet from the railroad in a pasture which was not fenced off from the company's right of way, might become frightened and confused by the sudden approach of the train, and attempt, as it did, to cross the track in front of it. Certainly the

jury might well have found that the engineer could have taken precautions to prevent the injury after the horse actually started towards the track, had the engineer kept a proper lookout; for he himself testified there was nothing to obstruct his view of the horse, and explained his failure to observe the horse's approach to the railroad merely by saying he was looking straight ahead up the track at the time. To then have promptly blown the "cattle alarm" and checked the speed of the train might have prevented all injury to the horse. It may be that the failure of the company's supervisor to tell the engineer to do so should not be counted against the defendant; for it appears from the testimony of the supervisor that his duty was merely to inspect the condition of the track, and that he was riding on the engine in order that he might perform that duty. But it is to be remarked that he was sitting on the fireman's box, where the latter should have been if not in the performance of some duty temporarily taking him from the station from which he usually maintained a lookout, and, nevertheless, the company made no effort to account for its fireman or to show why, if he did not actually see the horse start towards the track, he failed or was unable to do so. As no precautions whatever were taken to prevent striking the horse, it was incumbent upon the company to show to the satisfaction of the jury that its failure in this respect did not bring about the injury, but that it would have happened in any event.

*Judgment affirmed.    All the Justices concur.*